IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALESSANDRO-ROBERTO MARINELLO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 23-91-CFC |
| CALIBER HOME LOANS INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

Alessandro-Roberto Marinello, Saint Clair Shores, Michigan.   Pro se Plaintiff.

Michelle Streifthau-Livizos, Esquire, Saul Ewing Arnstein & Lehr LLP, Wilmington, Delaware.   Counsel for Defendants Caliber Home Loans, Inc. and Baron Silverstein.

**<u>MEMORANDUM OPINION</u>**

February 9, 2024
Wilmington, Delaware

*Ch J. C*

**CONNOLLY, Chief Judge:**

On January 25, 2023, Plaintiff Alessandro-Roberto Marinello filed this action, bringing claims related to his home mortgage loan.   (D.I. 2)   Plaintiff appears *pro se* and has paid the filing fee.   He proceeds on his Amended Complaint.   (D.I. 11)   Before the Court is a motion to dismiss the Amended Complaint, filed by Defendants Caliber Home Loans, Inc. ("Caliber") and Baron Silverstein.   (D.I. 28)   Also before the Court are four requests for default judgment and several other motions filed by Plaintiff.   (D.I. 10, 14, 15, 17, 27, 30, 32, 34, 35, 36, 37, 38, 40, 47, 49)

## I.   BACKGROUND

Plaintiff's allegations and claims are difficult to discern with precision. What is apparent is that he took out a home mortgage loan with Defendant Caliber in 2018, refinanced with Caliber in May 2020 (with the note reflecting a significantly reduced monthly payment), and eventually defaulted on the loan. Plaintiff claims that he lawfully rescinded the mortgage in December 2022, pursuant to provisions of the Truth in Lending Act ("TILA").[1]   A foreclosure sale

---

[1] In evaluating the motion to dismiss, the Court considers mortgage documents, payment logs, and refinance documents submitted by Plaintiff.   *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that in ruling on a motion to dismiss a district court may consider "document[s] integral to or explicitly relied upon in the complaint") (quotation omitted).

was held on April 14, 2023, during which Defendant Five Star Asset Management

("Five Star") purchased the property.

Plaintiff has also named as Defendants the Macomb County Sheriff's Office

and the Corporation Trust Company.    To date, executed summonses have not

been returned for Five Star, the Macomb County Sheriff's Office, or the

Corporation Trust Company, and counsel has not entered an appearance on behalf

of any of these three Defendants.

Plaintiff brings claims under TILA, the Fair Debt Collection Practices Act

("FDCPA"), the Fair Credit Billing Act ("FCBA"), the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), and, perhaps, the Fair Credit Reporting Act

("FCRA").    For relief, he seeks over 70,000 dollars in damages, cancellation of

all fees and charges he owes on the mortgage, a refund of all mortgage payments

and down payments he made, and free and clear title to the property.

In their motion to dismiss, Defendants Caliber and Silverstein assert that

Plaintiff has failed to state a claim; Plaintiff has failed to bring any allegations

against Silverstein; venue is improper in this Court; and that dismissal, rather than

transfer to a Michigan federal court, is appropriate in light of Plaintiff's failure to

state a claim.    Plaintiff has filed two motions requesting transfer to the United

States District Court for the Eastern District of Michigan (D.I. 32, 34), but he has

also filed a motion for leave to file a second amended complaint asserting that
venue is proper in this Court (D.I. 36).

## II.   LEGAL STANDARDS

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the
Court must accept all factual allegations in a complaint as true and take them in the
light most favorable to Plaintiff.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his
Complaint, "however inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers."   *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded
allegations in the complaint as true and viewing them in the light most favorable to
the complainant, a court concludes that those allegations "could not raise a claim
of entitlement to relief."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).
"Though 'detailed factual allegations' are not required, a complaint must do more
than simply provide 'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action.'"   *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236,
241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).   The Court is "not
required to credit bald assertions or legal conclusions improperly alleged in the
complaint."   *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d
Cir. 2002).   A complaint may not be dismissed, however, "for imperfect statement

of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574

U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has

"substantive plausibility." *Id*. at 12.   That plausibility must be found on the face

of the complaint.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "A claim has

facial plausibility when the [complainant] pleads factual content that allows the

court to draw the reasonable inference that the [accused] is liable for the

misconduct alleged."   *Id*.   Deciding whether a claim is plausible will be a

"context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."   *Id*. at 679.

## III.   DISCUSSION

The Court agrees with Defendants Caliber and Silverstein that venue is

improper in this District.    Given that Plaintiff has failed to state a claim, however,

the Court will dismiss this action rather than transfer it.

To begin, Plaintiff's TILA claim fails because "'the right to rescind under

the TILA does not apply to residential mortgage transactions.'"   *Cabrera v.*

*Nazor*, 2024 WL 310523, at *3 (D.N.J. Jan. 25, 2024) (quoting *Rivera v. Stearns*

*Lending, LLC*, 2023 WL 6962065, at *2 (E.D. Pa. Oct. 20, 2023) (citing *Perkins v.*

*Central Mortgage Corp.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006); 15 U.S.C.

4

§ 1635(e)(1); 12 C.F.R. § 226.23(f)(1) (exempting "residential mortgage

transactions" from a TILA remedy)).

The right to rescind under TILA similarly does not apply to "a refinancing or

consolidation (with no new advances) of the principal balance then due and any

accrued and unpaid finance charges of an existing extension of credit by the same

creditor secured by an interest in the same property."   *See* 15 U.S.C. § 1635(e)(2).

TILA's regulations explain that:

> A refinancing or consolidation by the same creditor of an extension of
> credit already secured by the consumer's principal dwelling [is exempt
> from the right to rescind].   The right of rescission shall apply,
> however, to the extent the new amount financed exceeds the unpaid
> principal balance, any earned unpaid finance charge on the existing
> debt, and amounts attributed solely to the costs of the refinancing or
> consolidation.

12 C.F.R. § 226.23(f)(2).   As the United States Court of Appeals for the Third

Circuit has succinctly explained in addressing these provisions and regulations of

TILA:

> In short, a borrower may rescind the "new money" portion of certain
> "refinancings," but not the "old money" portion.
>
> The exemption has a rather simple rationale. Although in general
> consumer borrowers need a "cooling off" period to reconsider
> encumbering the title to their homes, a borrower who refinances has
> already had that time to rethink with respect to the old money.   The
> borrower may want to reconsider further indebtedness, as that
> constitutes an additional risk of losing his or her home, but Congress
> evidently felt that it would be unfair to lenders if, simply by the
> expedient of seeking refinancing for the same amount, borrowers could
> gain the right to cancel the earlier loan.   In short, although the general

requirement of notification and opportunity to rescind protects borrowers, the statutory exemption for "refinancings" avoids overprotecting them at the expense of lenders.

When a "refinancing" does not involve new money, no disclosure of the (nonexistent) right to rescind is necessary, but where a "refinancing" does involve new money, lenders must still clearly notify borrowers of their (limited) rescission rights.

*In re Porter*, 961 F.2d 1066, 1074 (3d Cir. 1992) (footnotes omitted); *see also In re Albanes*, 560 B.R. 155, 165-66 (Bankr. D.N.J. 2016) ("[T]he rescission statute was designed to protect homeowners 'from certain sharp practices of home improvement contractors' and their financers and specifically from 'surprise and oppression stemming from mortgages unwittingly executed on homes to pay for often questionable 'home improvements,' hence the exception for the 'residential mortgage transaction' used for construction or purchase money loans.") (quoting *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1260-61 (D. Colo. 2004)).[2]

---

[2] The Court notes that in *Siffel v. NFM, Inc.*, a Third Circuit Panel stated that, because "the Siffels refinanced their mortgage loan with Countrywide," TILA afforded them "a right to rescind this agreement within three days." 386 F. App'x 169, 170 (3d Cir. 2010) (citing 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3)). A review of the district court docket in *Siffel*, however, reveals that the refinancing in question was through a different lender than the original loan, and was after multiple preceding refinancings, including for home improvements. Accordingly, this refinancing did not qualify for exemption from the right to recission provided in TILA. *See Porter*, 922 F.2d at 1078 n.19 ("As the district court observed, the exemption from rescission for 'refinancings' only applies if the refinancer and the original lender are the same.") (citations omitted).

It is quite clear from the pleadings and documents submitted by Plaintiff that his May 2020 refinancing was simply a means to secure a lower monthly payment. Accordingly, Plaintiff had no right of rescission under TILA, and he has therefore failed to state a claim that Defendants violated his TILA rights by not providing him notice of rescission rights.

Plaintiff's other possible TILA claims, and claims under the FDCPA, the FCBA, RICO, and the FCRA are wholly frivolous and do not warrant much by way of discussion. Notably, "[t]he FDCPA does not apply to creditors who collect their own debts; it applies only to debt collectors who collect debts owed to another," *Frazier v. Morristown Mem. Hosp.*, 767 F. App'x 371, 375 (3d Cir. 2019) (per curiam), and neither Caliber, nor the other Defendants are alleged to have sought to collect Plaintiff's debts owed to others. Furthermore, the claims under the FCBA fail because "the FCBA's protections do not extend to closed-end credit, such as mortgage loans." *Gresham v. Ocwen Loan Servicing, LLC*, 2018 WL 6599901, at *5 (D. Del. Dec. 17, 2018) (quotation omitted and cleaned up); *see also Krieger v. Bank of Am., N.A.*, 890 F.3d 429 (3d Cir. 2018) ("[T]he FCBA aims to 'protect the consumer against inaccurate and unfair credit billing and credit card practices.'") (quoting 15 U.S.C. § 1601(a)). Finally, Plaintiff puts forth no allegations in support of his additional claims under TILA, or RICO and FCRA claims.

7

Given that Plaintiff brings the same meritless claims against the remaining Defendants, they will be dismissed as well.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant the motion to dismiss filed by Defendants Caliber and Silverstein.    The remaining Defendants will be dismissed as well.    All of Plaintiff's pending requests for default judgment and motions will be denied as moot.

The Court will issue an Order consistent with this Memorandum Opinion.